1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY MORENO, an individual and          No. 1:14-cv-01024-KJM-SMS
     co-borrower, CYNTHIA MORENO, an
12   individual and co-borrower,

13                 Plaintiffs,                   ORDER

14         v.

15   WELLS FARGO HOME MORTGAGE,
     et al.,
16
                   Defendants.
17

18         This matter is before the court on defendants' Motion to Dismiss plaintiffs'

19   Complaint.  (ECF No. 5.)  Plaintiffs oppose the motion.  (ECF No. 18.)  The court decided the

20   motion without a hearing.  As explained below, the court GRANTS in part and DENIES in part

21   defendants' motion.

22   I.    INTRODUCTION AND PROCEDURAL BACKGROUND

23         The claims in this case arise out of defendants' alleged failure to keep their

24   promises in connection with providing a loan modification to plaintiffs.  (*See generally* Defs.'

25   Notice of Removal, Compl. Ex. A ("Compl."), ECF No. 1-1.)  Plaintiffs are the owners of real

26   property located in Modesto County (the Property), and defendants are the holders of the loan

27   secured by the Property.  (*Id.* ¶¶ 8–11.)  Plaintiffs purchased the Property in 2006.  (*Id.* ¶ 9.)  In

28   2009, plaintiffs defaulted on their mortgage.  (Defs.' Request for Judicial Notice, Ex. D, ECF No.

                                              1

6).[1]  When plaintiffs sought financial assistance from defendants (Compl. ¶ 10), defendants offered plaintiffs a loan modification that allegedly would lower plaintiffs' monthly payments, "forgive all of the arrears," and "cut their principal balance by over $100,000" (*id.* ¶ 12). Defendants' representative allegedly told plaintiffs they needed to make a "one-time lump sum payment of approximately $17,000" to obtain the modification.  (*Id.* ¶ 13.)  Plaintiffs made that payment.[2]  (*Id.* ¶ 14.)  Even though plaintiffs made that payment, they allege they "soon discovered . . . their mortgage payments were basically the same as they were before and . . . there was no reduction in the payments, principal, or any forgiveness of the arrears as was promised . . . ." (*Id.* ¶ 17.)  Consequently, plaintiffs again contacted defendants; defendants told them they could not provide any financial assistance, "but that Cynthia [Moreno] should re-apply . . . when she loses her job." (*Id.* ¶ 18.)  "Defendants later told [p]laintiffs that they should miss a payment in order to become delinquent so that [d]efendants would be able to provide them with financial assistance." (*Id.* ¶ 19.)  Subsequently, in 2011, defendants notified plaintiffs "they were unable to receive any assistance due to the high amount of debt [plaintiffs] had." (*Id.* ¶ 20.) Relying on that statement, plaintiffs filed for bankruptcy "to reduce the amount of debt they had." (*Id.* ¶ 21.)  Plaintiffs filed a Chapter 7 petition on January 31, 2013, and the bankruptcy court granted the petition on May 24, 2013.  (Ex. G, ECF No. 6 at 44–46.)[3]  But when plaintiffs contacted defendants after filing bankruptcy, defendants still refused to provide plaintiffs with financial assistance.  (*Id.*)  Plaintiffs allege their mortgage payment has remained the same as it was before "they were supposedly given a loan modification."  (*Id.* ¶ 22.)

---

[1] The court takes judicial notice of the notice of default recorded in the Stanislaus County Recorder's Office as document number 2009-0072260-00, because it is a matter of public record.  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2011).  Plaintiffs have not objected to defendants' Request for Judicial Notice.

[2] The court notes that defendants direct the court to exhibit F of their Request for Judicial Notice, stating defendants filed a notice of rescission of the notice of default.  (ECF No. 5 at 2.)  However, exhibit F is a notice of default, not a rescission.  (ECF No. 6, Ex. F at 48.)

[3] The court takes judicial notice of the filings on the bankruptcy court docket.  *See Martinez v. Extra Space Storage, Inc.*, No. 13-00319, 2013 U.S. Dist. LEXIS 105079, at *3 (N.D. Cal. July 26, 2013) ("tak[ing] judicial notice of the petition for Chapter 7 bankruptcy . . . , the discharge . . . , and the docket history from the [plaintiff']s bankruptcy").

On May 21, 2014, plaintiffs filed a complaint in the Stanislaus County Superior Court against defendants, alleging seven claims: (1) fraud in the inducement; (2) violation of California's Business and Professions Code section 17200 (UCL); (3) violation of the covenant of good faith and fair dealing; (4) negligence; (5) promissory estoppel; (6) breach of contract; and (7) intentional misrepresentation.  (*See* Compl. at 6–15.)  On June 30, 2014, defendants removed the case, asserting subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).  (ECF No. 1.)  Defendants now move to dismiss plaintiffs' Complaint.  (ECF No. 5.)  Plaintiffs oppose (ECF No. 18), and defendants have replied (ECF No. 19).

II.    LEGAL STANDARD ON MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule

1  does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

2  U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters

3  properly subject to judicial notice," or to material attached to or incorporated by reference into the

4  complaint.   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

5  III.   <u>DISCUSSION</u>

6       A.   Judicial Estoppel

7       Defendants argue plaintiffs' claims should be dismissed as barred by the judicial

8  estoppel doctrine.  (ECF No. 5 at 3–4.)  Specifically, defendants reason because plaintiffs did not

9  list their instant claims against defendants in plaintiffs' bankruptcy petition, they should be barred

10  from raising those claims by the instant lawsuit.  (*Id.* at 4.)

11       Plaintiffs respond they could not have listed their claims in their bankruptcy

12  petition because it was only after the debt's discharge that they "realized [defendants] had no

13  intention of providing them with assistance . . . ."  (ECF No. 18 at 7.)

14       "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

15  advantage by asserting one position, and then later seeking an advantage by taking a clearly

16  inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.

17  2001).  The doctrine's application "is not limited to bar the assertion of inconsistent positions in

18  the same litigation, but is also appropriate to bar litigants from making incompatible statements in

19  two different cases."  *Id.* at 783.  The Ninth Circuit "invokes judicial estoppel not only to prevent

20  a party from gaining an advantage by taking inconsistent positions, but also because of general

21  consideration[s] of the orderly administration of justice and regard for the dignity of judicial

22  proceedings, and to protect against a litigant playing fast and loose with the courts."  *Id.* at 782

23  (internal quotation marks omitted & alteration in original).  In sum, the doctrine's purpose is "to

24  protect the integrity of the judicial process," and the doctrine's invocation by a court is

25  discretionary.  *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).

26       In the bankruptcy context, "[j]udicial estoppel will be imposed when the debtor

27  has knowledge of enough facts to know that a potential [claim] exists during the pendency of the

28  bankruptcy, but fails to amend his schedules or disclosure statements to identify the [claim] as a

4

1   contingent asset." *Hamilton*, 270 F.3d at 784; *see also Ah Quin v. Cnty. of Kauai Dep't of*

2   *Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) ("In the bankruptcy context, the federal courts have

3   developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit

4   from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel

5   bars the action.").

6           Here, the court finds defendants' judicial estoppel argument unpersuasive.

7   Plaintiffs' theory of the case is that defendants told them in order to qualify for a loan

8   modification, plaintiffs needed to eliminate their debt.  (Compl. ¶¶ 20–21.)  Relying on that

9   assertion, plaintiffs filed for bankruptcy with the purpose of eliminating their debt.  (*Id.*)  After

10  the bankruptcy was finalized, plaintiffs contacted defendants to inform them of the debt's

11  discharge and to seek a loan modification, as defendants had allegedly promised.  (*Id.*)  But

12  "[d]efendants stated that because [plaintiffs] had filed bankruptcy, they were unable to provide

13  them with any financial assistance."  (*Id.* ¶ 21.)  Thus, it was not until the discharge of the debt

14  and defendants' alleged decision not to provide plaintiffs with a loan modification "that

15  [p]laintiffs realized [defendants] had no intention of providing them with assistance . . . ."  (ECF

16  No. 18 at 7; *see also* Compl. ¶ 21.)  Accordingly, at this early stage of the litigation, viewing the

17  Complaint's allegations as true, the court cannot say that "during the pendency of the bankruptcy"

18  plaintiffs had "knowledge of enough facts to know that a potential [claim] exist[ed]."  *Hamilton*,

19  270 F.3d at 784.  Therefore, the court DENIES defendants' motion to the extent it is based on the

20  judicial estoppel doctrine.

21          B.      Statute of Limitations

22          Defendants argue plaintiffs' claims for fraud in the inducement, promissory

23  estoppel, and intentional misrepresentation are time-barred because plaintiffs "filed this lawsuit

24  more than three years after the alleged misrepresentations occurred."  (ECF No. 5 at 4–6.)

25  Plaintiffs counter they did not learn of defendants' alleged fraudulent acts until 2013, "after

26  having followed [defendants'] suggestion of filing for bankruptcy in order to reduce their debt

27  and [defendants] still refused to consider them for a modification."  (ECF No. 18 at 8.)

28

                                                    5

1    In diversity of citizenship actions, federal courts apply state statutes of limitations.

2    *See Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945).  In California, "the nature of the

3    right sued upon, not the form of action or the relief demanded, determines the applicability of the

4    statute of limitations."  *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718 (1960); *see also*

5    *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) (to avoid permitting the plaintiff to avert

6    a statute of limitations through "artful pleading," California courts "look to the gravamen of the

7    cause of action").

8           1.    Fraud in the Inducement

9           In California, a plaintiff must bring a claim for fraud within three years of accrual

10   of the claim.  CAL. CIV. PROC. CODE § 338(d).  Such a claim accrues either when all the elements

11   are complete or when "the aggrieved party . . . [discovers] the facts constituting the fraud . . . ."

12   *Id.; Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *Nogart v. Upjohn Co.*, 21

13   Cal. 4th 383, 397 (1999).  A plaintiff must plead and prove that she did not make the discovery

14   until within three years of filing the complaint.  *Samuels v. Mix*, 22 Cal. 4th 1, 14 (1999).

15   Specifically, the pleadings must demonstrate with "particularity" "(1) the time and manner of

16   discovery and (2) the inability to have made earlier discovery despite reasonable diligence."

17   *Camsi IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536–37 (1991) (internal quotation

18   marks omitted); *Casualty Ins. Co. v. Rees Investment Co.*, 14 Cal. App. 3d 716, 719 (1971).

19          As an initial matter, it appears plaintiffs challenge allegedly unlawful acts by

20   defendants having taken place at different time-periods: first, plaintiffs allege the initial loan

21   modification did not comport with the terms promised by defendants; and second, plaintiffs allege

22   defendants reneged on their promise to provide plaintiffs with a new loan modification.  (*See*

23   Compl. at 10–22.)

24          Regarding the first modification agreement, it appears from the face of the

25   Complaint that the applicable statute of limitations has run.  Plaintiffs filed the instant lawsuit on

26   May 21, 2014, over four years after the parties entered into the first loan modification agreement.

27   Plaintiffs' claim is, hence, barred by the three-year statute of limitations unless plaintiffs can

28   show delayed discovery.  *See Bonyadi v. CitiMortgage, Inc.*, No. 12-5239, 2013 WL 2898143, at

1    *4 (C.D. Cal. June 10, 2013) ("[P]laintiff's cause of action accrued at the time she received her

2    allegedly fraudulent loan . . . ."). And that plaintiffs cannot do. Plaintiffs allege that soon after

3    their loan was modified, they found out "their mortgage payments were basically the same as they

4    were before" and that none of the promised terms were provided to them. (Compl. ¶ 17.)

5    Plaintiffs do not explain why they could not have learned about the allegedly fraudulent terms

6    from the document that would reveal the alleged fraud: the Modification Agreement. *See*

7    *Bonyadi*, 2013 WL 2898143, at *4. Indeed, plaintiffs do not dispute the terms of or their

8    signatures on the Agreement. *See id.* at *5 ("As a party to a contract which she signed, plaintiff is

9    charged with reading and understanding the terms of that contract or seeking assistance if she did

10    not . . . ."). Based on the allegations of the Complaint, the court finds plaintiffs' fraud claim is

11    time-barred as pled to the extent it is based on the allegations of fraudulent conduct surrounding

12    the first loan modification agreement. The court DISMISSES that claim with leave to amend

13    only if plaintiffs can do so consonant with Federal Rule of Civil Procedure 11.

14          On the other hand, to the extent plaintiffs' fraud claim is based on defendants'

15    alleged fraudulent conduct that occurred in 2013, plaintiffs' claim is self-evidently timely.

16          2.      Promissory Estoppel

17          The court next addresses plaintiffs' promissory estoppel claim. If the gravamen of

18    promissory estoppel claim is fraud, the claim is subject to the three-year statute of limitations

19    applicable to fraud claims. *Hines v. Wells Fargo Home Mortgage, Inc.*, No. 14-01386, 2014 WL

20    5325470, at *7 (E.D. Cal. Oct. 17, 2014). Here, in addition to incorporating paragraphs

21    containing fraud allegations (Compl. ¶ 50), plaintiffs allege defendants' "chose to knowingly

22    deceive them . . . ." (*Id.* ¶ 54.) The fraud analysis thus applies to plaintiffs' promissory estoppel

23    claim as well. The court DISMISSES plaintiffs' promissory estoppel claim as time-barred to the

24    extent it is based on the allegations of fraudulent conduct surrounding the first loan modification

25    agreement. Plaintiffs are GRANTED leave to amend if they can do so consonant with Rule 11.

26          On the other hand, the court finds plaintiffs' promissory estoppel claim timely to

27    the extent it is based on the alleged fraud that occurred in 2013.

28    /////

7

1        3.        Intentional Misrepresentation

2                Finally, as to plaintiffs' intentional misrepresentation claim, the same analysis as

3    above also applies, because this claim too is subject to the three-year limitation period under Civil

4    Procedure Code section 338(d).  *See Bonyadi*, 2013 WL 2898143, at *4 ("a claim for intentional

5    misrepresentation is grounded in fraud").  The court DISMISSES the claim to the extent it is

6    based on the allegations of fraudulent conduct surrounding the first loan modification agreement,

7    and GRANTS leave to amend if plaintiffs can do so consonant with Rule 11.

8                Plaintiffs' intentional misrepresentation claim is timely to the extent it is based on

9    the alleged fraud that occurred in 2013.

10               The court now turns to the substantive sufficiency of the individual claims.

11   C.        Sufficiency of the Allegations in the Complaint

12               1.        Fraud-Based Claims:  Fraud in the Inducement, Promissory Estoppel, and
13                         Intentional Misrepresentation

14               Plaintiffs claim that defendants misled plaintiffs by not disclosing defendants'

15   "actual assessment of the risk of default by plaintiffs" (Compl. ¶ 27(d)).  Plaintiffs further claim

16   they fell behind on their payments because defendants told them that to qualify for a loan

17   modification, plaintiffs needed to stop making any payments.  (*Id.* ¶ 42.)

18               a.        Assessment of the Risk

19               "[A]bsent special circumstances . . . a loan transaction is at arm's length and there

20   is no fiduciary relationship between the borrower and lender."  *Perlas v. GMAC Mortgage, LLC*,

21   187 Cal. App. 4th 429, 436 (2010) (internal quotation marks omitted & alteration in original).  "A

22   commercial lender pursues its own economic interests in lending money."  *Id.*  "A lender is under

23   no duty to determine the borrower's ability to repay the loan . . . . The lender's efforts to

24   determine the creditworthiness and ability to repay by a borrower are for the lender's protection,

25   not the borrower's."  *Id.* (internal quotation marks omitted).

26               The court finds plaintiffs' risk assessment argument unpersuasive.  Plaintiffs

27   allege defendants misrepresented their "actual assessment of the risk of default by [p]laintiffs."

28   (Compl. ¶ 27(d).)  Based on *Perlas*, this allegation cannot serve as a basis for a fraud-based claim

8

1   because defendants' determination of plaintiffs' risk of default is for defendants' protection, not

2   for plaintiffs'.  187 Cal. App. 4th at 436.  Accordingly, the court DISMISSES plaintiffs' fraud-

3   related claims — promissory estoppel, fraud in the inducement, and intentional misrepresentation

4   — to the extent they are based on the risk assessment allegation, without leave to amend.

5                    b.       Defendants' Alleged Advice to Stop Making Payments

6                Defendants contend plaintiffs cannot state a fraud-related claim based on their

7   allegation that defendants advised them to stop paying the mortgage to qualify for a loan

8   modification because plaintiffs do not plead reliance on defendants' alleged promise.  (ECF No. 6

9   at 6–8.)  Plaintiffs respond as follows:

10                At the time the misrepresentations were made to [p]laintiffs, they
             were not behind on their mortgage and their financial situation was
11           stable. They had not suffered a reduction in income. The only
             reason they were seeking a modification was so that they could
12           obtain the terms originally promised to them. . . .  This was not a
             situation where they were going to stop making their payments
13           regardless of the misrepresentations.  Plaintiffs could have
             continued paying and were simply asking for assistance in order to
14           lessen the burden.

15   (ECF No. 18 at 12.)

16                A plaintiff alleging a claim sounding in fraud must allege sufficient facts showing

17   justifiable reliance on the alleged misrepresentation.  *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th

18   85, 93 (2001).  Here, plaintiffs have not done so.  The Complaint merely provides conclusory

19   allegations as follows: "[d]efendants . . . told [p]laintiffs that they should miss a payment in order

20   to become delinquent so that [d]efendants would be able to provide them with financial

21   assistance" (Compl. ¶ 19) and "[d]efendants advised [p]laintiffs to stop paying their mortgage . . .

22   " (*id.* ¶ 42).  The Complaint, however, is devoid of factual allegations supporting plaintiffs'

23   argument in their opposition papers, as quoted above.  Accordingly, the court GRANTS

24   defendants' motion to dismiss plaintiffs' fraud-related claims to the extent they are based on

25   defendants' alleged advice.  Because the opposition papers set forth facts that might satisfy the

26   reliance requirement, as quoted above, the court GRANTS plaintiffs leave to amend if they can

27   do so consonant with Rule 11.  *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d

28   /////

                                        9

1133, 1137 (9th Cir. 2001) ("new" facts in plaintiff's opposition papers can be considered in
deciding whether to grant leave to amend).

2.  Contract-Based Claims

a.  Breach of Contract

Defendants argue plaintiffs' breach of contract claim cannot proceed because
defendants were "not required by the parties' written agreements to provide a loan modification
to [p]laintiffs." (ECF No. 5 at 8.) Plaintiffs respond they have alleged sufficient facts to meet the
necessary elements of a breach of contract claim. (ECF No. 18 at 13–15.)

"The elements for a breach of contract are: (1) the existence of a valid contract,
(2) plaintiff's performance or excuse for nonperformance, (3) defendants' breach, and (4) resulting
damage." *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1043 (E.D. Cal. 2010).

Plaintiffs have alleged sufficient facts to satisfy the elements of a breach of
contract claim. The existence of a contract element is satisfied because plaintiffs allege they
entered into a contract to modify their loan. (Compl. ¶¶ 11, 14.) The performance element is
satisfied because plaintiffs' mortgage payments "were being automatically withdrawn from their
bank account" by defendants under the alleged agreement. (*Id.* ¶ 16.) The breach element is
satisfied because even though defendants accepted plaintiffs' payment, they did not lower
plaintiffs' monthly payments, did not reduce the principal, and did not forgive the accumulated
arrears, as defendants had promised to do under the parties' agreement. (*Id.* ¶¶ 17, 56.) Finally,
plaintiffs allege they were harmed by defendants' alleged breach because, among other things,
they lost the $17,000 payment made to obtain the modification. (*Id.* ¶¶ 13, 58.)

In their reply papers, defendants argue any alleged oral communication is
"immaterial in light of the parol evidence rule." (ECF No. 19 at 4.) The court declines to
consider that argument, made for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997
(9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply
brief.").

The court DENIES defendants' motion as to plaintiffs' breach of contract claim.

/////

b.   Implied Covenant of Good Faith and Fair Dealing

Defendants argue this claim cannot proceed because no provision in the written agreements requires defendants to provide a loan modification.  (ECF No. 5 at 8–9.)  Plaintiffs respond,

> [they] do not need to show an express term of the contract has been breached by [d]efendant[s].  A claim for the breach of the implied covenant of good faith and fair dealing can be made when the other party's conduct frustrates his or her rights to the benefits contemplated by the agreement, but technically does not transgress the express provisions of the contract.

(ECF No. 18 at 16.)

"The implied covenant of good faith and fair dealing exists in every contract." *Clark*, 732 F. Supp. 2d at 1045.  The implied covenant "is aimed at making effective the agreement's promises."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).  "Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (1995).

Plaintiffs adequately allege a claim for breach of the implied covenant of good faith and fair dealing.  They say they "were led to believe their monthly payments would be reduced, that they would receive a reduction of their principal balance, and that the accumulated arrears would be forgiven."  (Compl. ¶ 40.)  Even though plaintiffs made the requested one-time payment, they "did not receive any of the promised terms of the loan modification."  (*Id.* ¶ 41.) These allegations support the plaintiffs' claim.  *Cf. Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1143 (E.D. Cal. 2013) (complaint found lacking "a specific contractual obligation on which to premise an implied covenant claim.").

The court DENIES defendants' motion as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

3.   Negligence

Defendants argue plaintiffs' negligence claim cannot proceed as a matter of law because defendants owed no duty of care to plaintiffs.  (ECF No. 5 at 9.)

11

Plaintiffs counter that defendant Wells Fargo as the servicer of plaintiffs' mortgage did owe "an ordinary duty of reasonable care in the modification of [the] loan." (ECF No. 18 at 20–21.) Plaintiffs further argue that they alleged Wells Fargo did not disclose "the true terms of the loan and induced [p]laintiffs to execute a loan which it knew was not in their best interest." (*Id.* at 21.) Wells Fargo "misrepresented the terms and pushed them into the loan claiming that it would be beneficial to them in the long run." (*Id.*)

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." *Id.* Because "[l]enders and borrowers operate at arm's length[,]" *id.* at 63, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Lueras*, 221 Cal. App. 4th at 67. "Likewise, a loan servicer generally does not owe a duty to the borrower of the loan it is servicing." *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12-2106, 2013 WL 5568737, at *4 (S.D. Cal. Oct. 3, 2013). "Absent special circumstances, there is no duty for a servicer to modify a loan." *Id.* In California, in determining whether a financial institution owes a duty of care to a borrower, a court balances various factors, "among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 231 Cal. App. 3d at 1098 (internal quotation marks omitted & alterations in original).

/////

/////

1         Here, the court's analysis is limited to "the specific action the plaintiff claims the

2    particular [defendant] had a duty to undertake in the particular case." *Id.* (internal quotation

3    marks omitted).  Under their negligence claim, plaintiffs allege defendants owed them the

4    following duties: (1) giving notice of the contract's new terms; (2) "providing a written contract

5    with the new terms"; and (3) "giving the borrower a chance to accept or refuse the new terms."

6    (Compl. ¶ 47.)

7         The court is unable to determine whether these allegations give rise to a duty of

8    care because they are conclusory and do not indicate that the relevant factors weigh in favor of

9    finding a duty.  *See Diunugala*, 2013 WL 5568737, at *4.  Accordingly, the court GRANTS

10   defendants' motion as to plaintiffs' negligence claim.  Plaintiffs are GRANTED leave to amend if

11   they can do so consonant with Rule 11.

12           4.     UCL

13        Defendants make two main arguments regarding the unfair competition claim.

14   First, defendants argue plaintiffs have no standing to state a UCL claim because they do not

15   allege Wells Fargo "obtained money through an unfair business practice . . . ."  (ECF No. 5 at 11.)

16   Second, defendants argue because plaintiffs' remaining claims cannot proceed, plaintiffs' UCL

17   claim itself is not viable.  (*Id.* at 10.)

18        Plaintiffs counter they have standing to assert a UCL claim because they allege

19   that, among other things, they "were induced to pay a large lump sum payment of [$17,000] . . ."

20   to obtain a modification.  (ECF No. 18 at 17.)  As to the claim's substantive viability, plaintiffs

21   respond they "state in detail Wells Fargo's unlawful and fraudulent behavior in connection with

22   [p]laintiffs' loan modification."  (*Id.* at 19.)

23           a.  Standing

24        "To have standing under the UCL, a [p]laintiff must allege that she suffered injury

25   in fact and has lost money or property as a result of the unfair competition."  *Plastino v. Wells*

26   *Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) (internal quotation marks omitted).

27        The court finds the allegations of the complaint sufficient to establish standing.

28   Plaintiffs allege defendants asked them to make a one-time $17,000 payment to obtain a loan

13

1    modification with terms reducing the principal of plaintiffs' loan and lowering plaintiffs' monthly

2    payments.  (Compl. ¶¶ 12–13.)  Plaintiffs further allege they made that payment and lost it by

3    virtue of getting nothing in return.  (*Id.* ¶¶ 14, 17.)  Hence, because plaintiffs have alleged

4    sufficient injury in fact, they have standing to bring a UCL claim.

5                                   b.       Elements of a UCL Claim

6             "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

7    fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

8    *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal

9    quotation marks omitted); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192,

10   1201 (E.D. Cal. 2010).  Because the statute is phrased in the disjunctive, a practice may be unfair

11   or deceptive even if it is not unlawful, or vice versa.  *Lippitt*, 340 F.3d at 1043.

12            An action is unlawful under the UCL and independently actionable if it constitutes

13   a violation of another law, "be it civil or criminal, federal, state, or municipal, statutory,

14   regulatory, or court-made."  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383

15   (1992); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1999).  Because the statute

16   borrows violations of other laws, a failure to state a claim under that law translates to a failure to

17   state a claim under the unlawful prong of the UCL.  *See Saunders,* 27 Cal. App. 4th at 838–39.

18            An act is "unfair" under the UCL if it "significantly threatens or harms

19   competition, even if it is not specifically proscribed by another law" or "is tethered to some

20   legislatively declared policy . . . ."  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

21   Cal. 4th 163, 180, 186–87 (1999); *Swanson v. EMC Mortg. Corp.*, No. 09–1507, 2009 WL

22   4884245, at *9 (E.D. Cal. Dec. 9, 2009).  "[T]he 'unfairness' prong has been used to enjoin

23   deceptive or sharp practices . . . ."  *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257

24   (2010) (internal citation and quotation marks omitted).  In federal court, an unfair business

25   practice claim grounded in fraud must be pled with particularity under Rule 9(b).  *Ness*, 317 F.3d

26   at 1103; FED. R. CIV. P. 9.  The fraudulent prong of the UCL is "governed by the reasonable

27   consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of

28   the public are likely to be deceived."  *Rubio v. Capital One Bank*, 613 Cal. App. 4th 1195, 1204 (9th Cir.

                                                         14

2010).  Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Here, plaintiffs' unfair competition allegations are too conclusory to survive a motion to dismiss.  Specifically, the complaint alleges as follows:

> Defendants' actions in implementing, perpetrating and then extending their fraudulent scheme of inducing [p]laintiffs to pay a substantial amount of money to receive a loan modification and then not providing [p]laintiffs with any financial assistance and then further refusing to help [p]laintiffs by providing them with false and damaging advice violates numerous federal and state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.

(Compl. ¶ 34.)

Because these allegations are stated in a conclusory fashion, the court GRANTS defendants' motion as to plaintiffs' UCL claim, with leave to amend if plaintiffs can do so consonant with Rule 11.

IV.     CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part defendants' Motion to Dismiss.  Plaintiffs' first amended complaint is due within 21 days from the date of this order.

IT IS SO ORDERED.

DATED:  November 12, 2014.

_____
UNITED STATES DISTRICT JUDGE

15