1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTHONY MORENO, et al.,

      Plaintiffs,

   v.

WELLS FARGO HOME MORTGAGE, et al.,[1]

      Defendants.

No. 1:14-cv-01024-KJM-SMS

ORDER

This matter is before the court on defendant Wells Fargo's[2] motion to dismiss plaintiffs' first amended complaint. (ECF No. 26.) Plaintiffs oppose the motion. (ECF No. 30.)

---

[1] The Ninth Circuit has held that if a defendant's identity is not known before the complaint is filed, a "plaintiff should be given an opportunity through discovery to identify the unknown defendants." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quotation marks omitted) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiffs are warned, however, that doe defendants will be dismissed if "it is clear that discovery would not uncover the[ir] identities, or that the complaint would be dismissed on other grounds." *Id.* (quotation marks omitted) (quoting *Gillespie*, 629 F.2d at 642). Plaintiffs are also warned that Federal Rule of Civil Procedure 4(m) is applicable to doe defendants. That rule provides the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless good cause is shown. *See Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

[2] Wells Fargo's predecessor in interest was World Savings Bank, FSB, which changed its name to Wachovia Mortgage, FSB and later became a division of Wells Fargo. (ECF No. 27-1, Ex. A.)

1

The court decided the motion without a hearing. As explained below, the court GRANTS in part and DENIES in part defendant's motion.

I.     BACKGROUND

The claims in this case arise out of defendant's alleged failure to keep its promises in connection with providing a loan modification to plaintiffs. (*See generally* First Am. Compl. (Compl.), ECF No. 25.) Plaintiffs are the owners of real property located in Modesto County (the Property), and defendant is the holder of the $430,000 loan secured by the Property. (*Id.* ¶¶ 9–10.) Plaintiffs purchased the property in 2006. (*Id.* ¶ 10.) In 2009, plaintiffs defaulted on their mortgage. (*Id.* ¶ 13.) When plaintiffs sought financial assistance from defendant (*id.* ¶ 11), defendant offered plaintiffs a loan modification that would allegedly lower plaintiffs' monthly payments, "forgive all of the arrears," and "cut their principal balance by over $100,000" (*id.* ¶ 14). Defendant's representative allegedly told plaintiffs they needed to make a "one-time lump sum payment of approximately $17,000" to obtain the modification. (*Id.* ¶ 16.) Plaintiffs made that payment. (*Id.* ¶ 17.) Plaintiffs further allege,

> "[they] executed the modification agreement, which on its face seems to reduce the principal. However, [p]laintiffs did not understand and were not told that the modification changed their loan to an interest-only loan. Therefore, even though the principal was reduced . . . , as an interest-only loan, [p]laintiffs would end up paying . . . ($169,496.52) up through 2016 without reducing a single cent of the principal.

(*Id.* ¶ 18.)

Plaintiffs "soon discovered . . . their mortgage payments were basically the same as they were before and . . . there was no reduction in the payments, principal, or any forgiveness of the arrears as was promised . . . ." (*Id.* ¶ 23.) Consequently, plaintiffs contacted defendant; defendant told them it could not provide any financial assistance, "but that Cynthia [Moreno] should re-apply for a loan modification when she lost her job." (*Id.* ¶ 24.) "Defendant[] later told [p]laintiffs that, alternatively, they should miss a payment in order to become delinquent so that [d]efendant[] would be able to provide them with financial assistance." (*Id.* ¶ 25.) Subsequently, in 2012, defendant notified plaintiffs they "were unable to receive any assistance due to the high amount of debt they had." (*Id.* ¶ 26.) Relying on that statement, plaintiffs filed for bankruptcy

"to reduce the amount of debt they had." (*Id.* ¶ 27.) But when plaintiffs contacted defendant after filing bankruptcy, defendant still refused to provide plaintiffs with financial assistance. (*Id.* ¶ 29.) Plaintiffs allege their mortgage payment has remained the same as it was before "they were supposedly given a loan modification." (*Id.* ¶ 33.)

On May 21, 2014, plaintiffs filed a complaint in the Stanislaus County Superior Court against defendant, alleging seven claims: (1) fraud in the inducement; (2) violation of California's Business and Professions Code section 17200 (UCL); (3) violation of the covenant of good faith and fair dealing; (4) negligence; (5) promissory estoppel; (6) breach of contract; and (7) intentional misrepresentation. (*See* ECF No. 1-1 at 6–15.) On June 30, 2014, defendant removed the case, asserting federal subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a). (ECF No. 1.) On July 10, 2014, defendant moved to dismiss plaintiffs' complaint (ECF No. 5), and, on November 12, 2014, the court granted in part and denied in part defendant's motion (Order, ECF No. 24). On December 3, 2014, plaintiffs filed their operative first amended complaint, alleging the same seven claims as in the original complaint. (ECF No. 26.) Plaintiffs oppose the pending motion (ECF No. 30), and defendant has replied (ECF No. 31). Defendant has also filed a request for judicial notice. (ECF No. 27.)

II.     JUDICIAL NOTICE

Defendant asks that this court take judicial notice of eight exhibits:

1. Exhibit A includes:

    (a) A certificate of corporate existence, dated April 21, 2006, issued by the Office of Thrift Supervision (OTS), Department of the Treasury, showing World Savings Bank, FSB was a federal bank;

    (b) A letter, dated November 19, 2007, from OTS authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB;

    (c) A charter of Wachovia Mortgage, FSB, effective December 31, 2007, and signed by the Director of OTS;

3

1         (d) An official certification of the Comptroller of the Currency showing,

2         effective November 1, 2009, Wachovia was converted to Wells Fargo Bank

3         Southwest, N.A., which then merged into Wells Fargo Bank, N.A.; and

4         (e) A printout from the website of the Federal Deposit Insurance Corporation,

5         showing World Savings Bank, FSB's history;

6    2. Exhibit B is an adjustable rate mortgage note, dated March 20, 2007, signed by

7      plaintiffs;

8    3. Exhibit C is a deed of trust, dated March 20, 2007, and recorded in the official

9      records of the Stanislaus County Recorder's Office on March 27, 2007 as Doc-

10     2007-0039427-00;

11   4. Exhibit D is a notice of default, dated July 21, 2009, and recorded in the

12      official records of the Stanislaus County Recorder's Office on March 27, 2007

13      as Doc-2009-0072260-00;

14   5. Exhibit E is a modification agreement, dated September 25, 2009, signed by

15      plaintiffs;

16   6. Exhibit F is a notice of rescission of notice of default, dated October 19, 2009,

17      recorded in the official records of the Stanislaus County Recorder's Office on

18      October 28, 2009 as DOC-2009-0103931-00;

19   7. Exhibit G is the Bankruptcy Docket for petition number 13-90198 filed in the

20      U.S. Bankruptcy Court for the Eastern District of California; and

21   8. Exhibit H is the bankruptcy petition, numbered 13-90198, filed on January 31,

22      2013 in the U.S. Bankruptcy Court for the Eastern District of California.

23 (ECF No. 27, Exs. A–H; ECF No. 32.)

24      Plaintiffs do not object to defendant's request.

25      With respect to documents (a) through (d) of exhibit A, judicial notice is

26 appropriate because "those documents reflect the official acts of the executive branch of the

27 United States." *Preciado v. Wells Fargo Home Mortgage*, No. 13-00382, 2013 WL 1899929, at

28

1  *3 (N.D. Cal. May 7, 2013). Judicial notice is also appropriate for document (e) under Exhibit A

2  "because it is information obtained from a governmental website." *Id.*

3        With respect to exhibits B and E, the court may consider them because the

4  complaint refers to them, they are central to plaintiffs' complaint, and no party questions their

5  authenticity. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

6        With respect to exhibits C, D, and F, judicial notice is appropriate because the

7  documents are matters of public record. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir.

8  2011).

9        With respect to exhibits G and H, the court takes judicial notice of the filings on

10 the bankruptcy court docket. *See Martinez v. Extra Space Storage, Inc.*, No. 13-00319, 2013 WL

11 3889221, at *1 (N.D. Cal. July 26, 2013) (taking "judicial notice of the petition for Chapter 7

12 bankruptcy . . . , the discharge of debtor . . . , and the docket history from the [plaintiff's]

13 bankruptcy").

14 III.    <u>LEGAL STANDARD ON MOTION TO DISMISS</u>

15       Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

16 complaint for "failure to state a claim upon which relief can be granted." A court may dismiss

17 "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

18 cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

19       Although a complaint need contain only "a short and plain statement of the claim

20 showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to

21 dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

22 to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

23 Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something

24 more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

25 conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting

26 *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss

27 for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

28 its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the

interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

IV. DISCUSSION

A. Plaintiffs' Untimely Filing of Their Opposition Brief

Defendant argues the court should dismiss plaintiffs' complaint for "failure to file an opposition." (ECF No. 29 at 2.) Plaintiffs "acknowledge that they missed the deadline to file the [o]pposition," but "request the [c]ourt accept [it] because their failure . . . was a result of an inadvertent calendaring mistake." (ECF No. 30 at 2.) The court finds defendant's argument for dismissal unpersuasive.

Local Rule 230(c) requires that opposition "be filed and served not less than fourteen (14) days preceding the noticed . . . hearing date." It further provides that "[n]o party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party." *Id.*

It is undisputed plaintiffs' opposition was untimely. The hearing on defendant's motion to dismiss was scheduled for February 27, 2015 (ECF No. 34), and thus, the last day for plaintiffs to file their opposition was February 13, 2015. Plaintiffs filed their opposition on February 17, 2015. (ECF No. 30.) While the court has the authority to dismiss a complaint for lack of compliance with the Local Rules, *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995), the court declines to do so in this case. The purposes of the Federal Rules of Civil Procedure include to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The pleading rules are designed to "facilitate decision on the merits, rather than on

1  the pleadings and technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal

2  quotation marks omitted).  Those purposes are better served by resolving defendant's motion to

3  dismiss on the merits than by striking the complaint.  As a sister district court observed in similar

4  circumstances, "Deciding the Motion to Dismiss advances resolution of the case on the merits and

5  avoids the needless delay and expense that would result from requiring Plaintiff to file another

6  complaint and requiring Defendants to file another Motion to Dismiss." *Smith v. Cnty. of Santa*

7  *Cruz*, No. 13-00595, 2014 WL 1118014, at *3 (N.D. Cal. Mar. 19, 2014).  Finally, defendant has

8  not provided any evidence of prejudice. *Id.* at *4.  While plaintiffs are cautioned that future

9  failures to abide by the court's local rules may result in the issuance of an order to show cause

10  why sanctions should not be imposed, the court proceeds to the merits.

11        B.      Fraud-Based Claims: Plaintiffs' First, Fifth, and Seventh Claims

12             1.      Statute of Limitations

13            Defendant argues plaintiffs' claims for fraud in the inducement, promissory

14  estoppel, and intentional misrepresentations are time-barred because plaintiffs "filed this lawsuit

15  more than three years after the alleged misrepresentations occurred."  (ECF No. 26 at 4–6.)

16  Plaintiffs counter this court has already ruled on defendant's argument in plaintiffs' favor, and

17  there is no occasion to revisit that ruling.  (ECF No. 30 at 7–8.)

18            In its prior order, the court found the statute of limitations had run for plaintiffs'

19  fraud-based claims related to the first modification agreement.  (Order, ECF No. 24 at 6–8.)

20  Plaintiffs do not dispute that ruling.  (ECF No. 30 at 7–8.)  Nor do plaintiffs provide any

21  argument or new allegations to show delayed discovery.  *See Bonyadi v. CitiMortgage, Inc.*, No.

22  12-5239, 2013 WL 2898143, at *4 (C.D. Cal. June 10, 2013) ("[P]laintiff's cause of action

23  accrued at the time she received her allegedly fraudulent loan . . . .").  The court granted plaintiffs

24  leave to amend to allege new facts to defeat a statute of limitations if they could do so.  Plaintiffs

25  have not taken advantage of the opportunity.  The court finds, for the same reasons set forth in the

26  court's prior order, plaintiffs' claims for fraud in the inducement, promissory estoppel, and

27  intentional misrepresentation are time-barred to the extent they are based on the allegations of

28

7

fraudulent conduct surrounding the first loan modification agreement.  The court DISMISSES those claims with prejudice.

On the other hand, to the extent plaintiffs' claims for fraud in the inducement, promissory estoppel, and intentional misrepresentation are based on defendant's alleged later fraudulent conduct, plaintiffs' claims are timely, as also described in the court's prior order.  *See Arizona v. California*, 460 U.S. 605, 618 (1983) (explaining "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").  Defendant presents no argument supporting a departure from that decision.  *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.").  The motion attacking these claims is denied.

2.   Defendant's Alleged Advice to Plaintiffs to Lose Employment or to Miss a Payment

Defendant argues plaintiffs' allegations do not show their reliance on defendant's alleged statements because "[n]o reasonable person would intentionally lose a job based on a promise to get a loan modification."  (ECF No. 26 at 8–9.)  In the alternative, defendant argues plaintiffs' allegations of reliance are conclusory.  (*Id.* at 9.)

Plaintiffs counter they "have not alleged anywhere that they actually lost their job[s]."  (ECF No. 30 at 10.)  Rather,

> Plaintiffs simply alleged that the Wells Fargo representative suggested that *either* Cynthia Moreno lose her job *or* that they miss their payments.  After discussing these options with the representative, Plaintiffs were advised that missing their payments was their best option and would qualify them for a modification.  Given that Plaintiffs were speaking to the bank to which the payments were owed, they felt that if the bank representative was telling them to miss payments then it was a viable solution to their problem because it would result in a modification.

(*Id.*) (emphases in original).

/////

8

A plaintiff alleging a claim sounding in fraud must allege sufficient facts showing justifiable reliance on the alleged misrepresentation. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001). Whether reliance is reasonable is a question of fact. *See Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1473, 1475 (1990), *cited in* 5 Witkin, Summary 10th (2005) Torts, § 812, p. 1173. The California Supreme Court has set forth the following rules on justifiable reliance:

> A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon.
>
> It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance. He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust. If, however, the opinion or legal conclusion misrepresents the facts upon which it is based or implies the existence of facts which are nonexistent, it constitutes an actionable misrepresentation.
>
> Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. As a general rule negligence of the plaintiff is no defense to an intentional tort. The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery, and it is well established that he is not held to constructive notice of a public record which would reveal the true facts. The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations, but to bona fide purchasers for value.
>
> Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool. If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery. He may not put faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth . . . .

*Seeger v. Odell*, 18 Cal. 2d 409, 414–15 (1941) (internal citation and quotation marks omitted), *cited in Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) (en banc).

1         Here, plaintiffs' allegations are sufficient.  Plaintiffs allege as follows:

> 42.  Defendant specifically advised Plaintiffs to lose their employment, or in the alternative, to stop making their monthly payments in order to receive a modification.  When Plaintiffs followed their advice, Defendant further told them they also needed to reduce their debt and should file for bankruptcy.  Plaintiffs also relied on this misrepresentation and filed for bankruptcy.  Nonetheless, Defendant refused to help them.
>
> 43.   At the time the misrepresentations were made to Plaintiffs, they were not behind on their mortgage and their financial situation was stable.  They had not suffered a reduction in income.  The only reason they were seeking a modification was so that they could obtain the terms originally promised to them.  Plaintiffs only stopped making their payments and filed for bankruptcy because of Defendant's misrepresentations.
>
> 44.   Plaintiffs could have continued paying the loan, as they had been doing through automatic payments, and were simply asking for assistance in order to lessen the burden and in order to receive the terms originally promised to them which Defendant had breached.

(ECF No. 25.)

These allegations put defendants on sufficient notice.  Hence, this court cannot grant defendant's motion on that basis.  To that extent the motion is denied.

        3.      <u>Damages</u>

Defendant argues plaintiffs have not pled that they have suffered any damages to support their fraud-based claims.  (ECF No. 26 at 9–10.)  Plaintiffs counter "[t]hey were misled into stopping their mortgage payments and filing for bankruptcy[,] which has hurt their credit score, caused them to incur legal fees and costs, and has placed them in the position of possibly losing their home."  (ECF No. 30 at 11.)

It is rudimentary that "fraud without damages is not actionable . . . ." *Furia v. Helm*, 111 Cal. App. 4th 945, 956 (2003) (quoting *Billings v. Farm Dev. Co.*, 74 Cal. App. 254, 259 (1925)).

Here, the first amended complaint does not clearly describe what damages plaintiffs have suffered.  Therefore, the court grants defendant's motion to dismiss.  But because the opposition sets forth facts that might satisfy the damages element, as quoted above, *see* page 10 *supra*, the court grants plaintiffs leave to amend if they can do so consonant with Rule 11.  *See*

10

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) ("new" facts in plaintiff's opposition papers can be considered in deciding whether to grant leave to amend).

    C.    <u>Contract-Based Claims</u>

        1.    <u>Breach of Contract</u>

Defendant argues plaintiffs' breach of contract claim cannot proceed because of the parol evidence rule: "Whatever was said by the parties prior to, or contemporaneous with, the signing of the 2009 modification is immaterial." (ECF No. 26 at 11.) Plaintiffs do not expressly respond to that argument. (*See* ECF No. 30 at 12 ("Plaintiffs respectfully request the court consider the reasoning of its own Order issued on November 12, 2014.").)

Because the misnamed "parol evidence rule" is a rule of substantive law, a federal court applies the forum state's substantive law on parol evidence in diversity actions. *See Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-912, 2007 WL 3047093, at *6 (S.D. Cal. Oct. 16, 2007).

The parol evidence rule is codified in California Code of Civil Procedure section 1856 and California Civil Code section 1625. *See* Cal. Civ. Proc. Code § 1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."); Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."). As the California Supreme Court has observed:

> [The rule] is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations. Extrinsic evidence of the agreement's terms is thus *irrelevant*, and cannot be relied upon. . . . The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change.

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013) (internal citations omitted, emphasis in original).

1          Here, plaintiffs' allegations of oral promises in connection with the first loan
2  modification agreement are barred by the parol evidence rule. The parties entered into a loan
3  modification agreement in October 2009. (ECF No. 27-1, Ex. E.) The loan modification
4  agreement sets forth the terms of the agreement. Hence, any oral statements made in connection
5  with the terms of the agreement are irrelevant under the parol evidence rule and cannot form the
6  bases of plaintiffs' breach of contract claim. *See Rosenburg v. Bank of Am.*, *N.A.*, No. 11-10597,
7  2013 WL 1191436, at *5 (C.D. Cal. Mar. 21, 2013). Accordingly, the court grants defendant's
8  motion to dismiss plaintiffs' breach of contract claim to the extent it is based on breach of alleged
9  oral terms contradicting the written modification agreement. However, the court grants plaintiffs
10 leave to amend to the extent plaintiffs can allege the existence of a separate oral agreement with
11 terms not inconsistent with the modification agreement, if they can do so consonant with Rule 11.
12 *See Post v. Palpar, Inc.*, 184 Cal. App. 2d 676, 681 (1960) ("It is well established that evidence is
13 admissible to prove the existence of a separate oral agreement as to any matter on which the
14 document is silent and which is not inconsistent with its terms.").

15          2.    Breach of Implied Covenant of Good Faith and Fair Dealing

16          Defendant argues because there is no agreement provision stating defendant would
17 provide another loan modification, there is no express term on which plaintiffs can allege breach
18 of the implied covenant of good faith and fair dealing. (ECF No. 26 at 11–12.) Plaintiffs again
19 simply "respectfully request the court consider the reasoning in its own Order issued on
20 November 12, 2014." (ECF No. 30 at 12.)

21          "The implied covenant of good faith and fair dealing exists in every contract."
22 *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1045 (E.D. Cal. 2010). The
23 implied covenant "is aimed at making effective the agreement's promises." *Kransco v. Am.*
24 *Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000). "Broadly stated, that covenant
25 requires that neither party do anything which will deprive the other of the benefits of the
26 agreement." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (1995).

27          Here, as the court noted above, to the extent plaintiffs' claim is based on oral
28 promises defendant allegedly made in connection with the first modification agreement, those

12

allegations are barred by the parol evidence rule.  Hence, plaintiffs cannot base their breach of the implied covenant of good faith and fair dealing claim on those alleged oral terms.  The court grants defendant's motion to that extent.  However, the court grants plaintiffs leave to amend, if they can, to allege facts showing the existence of a separate oral agreement upon which they base their claim for breach of the implied covenant of good faith and fair dealing.  *See Rosenburg*, 2013 WL 1191436, at *5.

        D.        <u>Negligence</u>

Defendant argues, in essence, that because it did not exceed its role as a lender, it did not owe a duty of care to plaintiffs in connection with loan modification. (ECF No. 26 at 12–15.) Plaintiffs argue defendant owed them a duty of care in carrying out the modification. (ECF No. 30 at 16–20.)

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).  "Whether a duty of care exists is a question of law to be determined on a case-by-case basis."  *Id.*  Because "[l]enders and borrowers operate at arm's length[,]"*id.* at 63, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991).  "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Lueras*, 221 Cal. App. 4th at 67.  "Likewise, a loan servicer generally does not owe a duty to the borrower of the loan it is servicing."  *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12-2106, 2013 WL 5568737, at *4 (S.D. Cal. Oct. 3, 2013).  "Absent special circumstances, there is no duty for a servicer to modify a loan."  *Id.*

However, *Nymark* "does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014).  "A duty may arise even where the lender remains within its conventional

13

role of merely loaning money." *Johnson v. PNC Mortgage*, No. 14-02976, 2015 WL 662261, at *3 (N.D. Cal. Feb. 12, 2015) (internal quotation marks omitted). In California, in determining whether a financial institution owes a duty of care to a borrower, a court balances various factors, "among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 231 Cal. App. 3d at 1098 (internal quotation marks omitted, alterations in original). The recent California Court of Appeal decision in *Alvarez* analyzed those six factors and concluded that "because [the] defendants allegedly agreed to consider modification of the plaintiffs' loan, the . . . factors clearly weigh in favor of a duty." 228 Cal. App. 4th at 948.

Here, the court cannot perform its ultimate function of balancing the relevant factors, without a more cogent set of facts and more specific allegations as to how exactly defendant breached its duty of care. The following examples illustrate the conclusory nature of plaintiffs' allegations: "Defendant promised Plaintiffs to review them for a loan modification in good faith and failed to do so"; "Defendant's modification defeated the very purpose of the loan modification process by placing plaintiffs in a more precarious situation"; and "Defendant did not undertake a good faith review and violated its duty of care by misleading Plaintiffs throughout the process." (ECF No. 25 ¶ 73.) Because the court will be unable to balance the relevant factors given the conclusory nature of the allegations, it grants defendant's motion to dismiss. However, the court grants plaintiffs leave to amend if they can do so consonant with Rule 11.

E.   UCL

Defendant argues, first, plaintiffs have no standing under the UCL as they have not suffered an injury and none of the remedies under the UCL are available to them, and, second, plaintiffs' UCL claim must fail because plaintiffs' other claims cannot proceed. (ECF No. 26 at 16–18.)

14

1. <u>Standing</u>

"To have standing under the UCL, a [p]laintiff must allege that she suffered injury in fact and has lost money or property as a result of the unfair competition." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) (internal quotation marks omitted).

In its prior order, the court found plaintiffs had standing because, among other reasons, they alleged they made a one-time $17,000 payment to obtain modification with the promised terms, but defendant reneged on its promise. (Order, ECF No. 24 at 13–14; ECF No. 25 ¶ 50.) Defendant does not argue that the court should revisit that ruling. *See Arizona*, 460 U.S. at 618 (explaining "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Nor does the court find the need to reconsider. Plaintiffs make the same allegations in their first amended complaint as they did in the original complaint, which the court found sufficient for purposes of standing under the UCL. (ECF No. 25 ¶ 50.) *See Alexander*, 106 F.3d at 876. Because plaintiffs have alleged sufficient injury in fact, they have standing to bring a UCL claim.

As to defendant's argument that plaintiffs have no available remedy, the court finds it unpersuasive. (ECF No. 26 at 18.) The UCL limits remedies to injunctive relief and restitution. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005). Here, plaintiffs seek restitution. (ECF No. 25 at 22 ¶ 3.) In the UCL context, restitution "is limited to the return of property or funds in which the plaintiff has an ownership interest." *Madrid*, 130 Cal. App. 4th at 453. "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). The relief plaintiffs seek is restitutionary because they are seeking the return of money, the one-time $17,000 payment, which "was once in [their] possession[]" and which plaintiffs gave to defendant; "[a]ny award that plaintiff[s] would recover from defendant[] would . . . be restitutionary as it would . . . replace . . . money . . . that defendant[] took directly from plaintiff[s]." *Id.*

Because plaintiffs sufficiently allege an injury and seek restitution, they have alleged sufficient standing to bring a UCL claim, at this stage of the litigation.

15

2. <u>Grounds of a UCL Claim</u>

"To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal quotation marks omitted). "The scope of the UCL is quite broad." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). Because the statute is phrased in the disjunctive, a practice may be unfair or deceptive even if it is not unlawful, or vice versa. *Lippitt*, 340 F.3d at 1043.

In the instant case, because the allegations of the first amended complaint revolve around the "unfair" prong, the court limits its discussion to that prong. "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473. The determination whether a practice is unfair "is one of fact which requires a review of the evidence from both parties[,] and "thus cannot usually be made on [motions to dismiss.]" *Id.*

Here, the allegations are sufficient to survive defendant's motion to dismiss. Plaintiffs allege unscrupulous acts that cause injury to consumers and that outweigh any benefits. As an example, consider the following allegations of unfair business practices:

> (7) Defendant advised Plaintiff CYNTHIA MORENO to lose her job in order to get financial assistance; (8) Defendant advised Plaintiffs to miss their monthly payments in order to qualify for a new modification; (9) Defendant refused to consider Plaintiffs for a new modification after Plaintiffs stopped making their payments in reliance upon Defendant's misrepresentations; (10) Defendant advised Plaintiffs that they could not provide assistance because Plaintiffs' debt was too high and they should therefore file for bankruptcy; (11) Defendant refused to consider Plaintiffs for a new modification after Plaintiffs filed for bankruptcy in reliance upon Defendant's misrepresentations . . . .

(ECF No. 25 ¶ 50.)

The court denies defendant's motion to dismiss plaintiffs' UCL claim.

## V. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part defendant's motion to dismiss. Plaintiffs' second amended complaint is due within twenty-one (21) days from the date of this order. This order resolves ECF No. 26.

IT IS SO ORDERED.

DATED: June 1, 2015.

_____
UNITED STATES DISTRICT JUDGE